1

2

3

4

5

6

7               UNITED STATES DISTRICT COURT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11   GILBERT GUZMAN,                    No. C 06-5241 JSW (PR)

12              Petitioner,             **ORDER DENYING PETITION FOR
                                        WRIT OF HABEAS CORPUS**
13        v.

14   M.S. EVANS, Warden, et al.,

15              Respondent.

16   —————————————————————————/

17                      **INTRODUCTION**

18        This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C.

19   § 2254.  For the reasons set forth below, the petition is DENIED.

20                       **STATEMENT**

21        In 2000, Petitioner conspired in the murders by arson of his ex-girlfriend's ex-

22   boyfriend's grandparents and brother.  After a trial on charges arising from this incident,

23   Petitioner was convicted by a Santa Clara Superior Court jury of three counts of "arson-

24   felony-murder," Cal. Pen. Code §§ 187; 451(b).  The jury also found true the special

25   circumstances of multiple murders and murder in the commission of arson as to each murder

26   victim, id. §§ 190.2(a)(3) & (a)(17).  The trial court sentenced Petitioner to three consecutive

27   life sentences in state prison without the possibility of parole.  Petitioner appealed.  The

28   California Court of Appeal for the Sixth Appellate District affirmed the judgment, but

1    modified the sentence to reflect an imposition of only one multiple-murder special

2    circumstance.  (Ans.,  Ex. B-3 at 1–2, 59.)  The California Supreme Court denied his petition

3    for review.  (*Id*., Ex. C-3.)

4         Evidence presented at trial showed that Petitioner hated David Pequeno ("Pequeno"),

5    a fellow drug dealer and fellow member of Petitioner's street gang, because Pequeno had

6    dated Petitioner's ex-girlfriend, Nicole Fierro.  In June 2000, Petitioner and his two co-

7    defendants, Freitas and Rusich, created a firebomb from a beer bottle containing gasoline,

8    and a torn sheet, which acted as a wick for this "Molotov cocktail."  Freitas and Rusich alone

9    drove to Pequeno's grandparents' house in the hope that Pequeno was there, and threw the

10   firebomb at the dwelling.  Higinio Pequeno, aged eighty, his wife Guadalupe, aged seventy-

11   eight, and their forty-seven year old son Daniel died from smoke inhalation and burns.  (*Id*.,

12   Ex. B-3 at 1.)

13        As grounds for federal habeas relief, Petitioner alleges that (1) insufficient evidence

14   supports Petitioner's convictions; (2) the trial court's admission of preliminary hearing

15   testimony violated Petitioner's confrontation rights; (3) Petitioner's due process rights were

16   violated by the admission of prejudicial hearsay; (4) there was prosecutorial misconduct;

17   (5) the trial court's failure to provide an accomplice instruction violated Petitioner's rights

18   to due process and a fair trial; and (6) trial counsel rendered ineffective assistance.  In his

19   amended petition, Petitioner advances three claims adopted from claims brought by Freitas

20   on direct appeal.  These additional claims are:  (7) the trial court failed to give an

21   instruction on the elements of conspiracy; (8) the trial court's instruction on felony murder

22   was erroneous; and (9) trial counsel was ineffective in failing to challenge a witness's

23   testimony.

24                                    **STANDARD OF REVIEW**

25        Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a district

26   court may not grant a petition challenging a state conviction or sentence on the basis of a

27   claim that was reviewed on the merits in state court unless the state court's adjudication of

28   the claim:

**United States District Court**
For the Northern District of California

2

1

2

3

      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. 2254(d).

5

6

7

      The first prong applies both to questions of law and to mixed questions of law and fact. *Williams v. Taylor*, 529 U.S. 362, 407–09 (2001). The second prong applies to decisions based on factual determinations. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003).

8

9

10

11

12

13

14

15

16

17

18

19

20

      A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. A state court decision is an "unreasonable application of" Supreme Court authority, and thus falls under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. A federal court on habeas review may not issue a writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

21

22

23

24

25

26

      Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary. *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeal, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981). A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id*.

27

28

      Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the

**United States District Court**
For the Northern District of California

3

1   evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

2                                    **DISCUSSION**

3   **I.      Sufficiency of Evidence**

4           Petitioner claims that the evidence presented at trial was insufficient to support the

5   jury's finding of the felony murder special circumstance. (Am. Pet. at 24.)  Specifically,

6   Petitioner there was insufficient evidence that he had an independent felonious intent to

7   commit arson or that he had the intention to kill.  (Id. at 26.)  The state appellate court

8   rejected this claim, finding that evidence existed that permitted a jury "to draw the

9   conclusion that [Petitioner] had intended to kill Pequeno if he could, but if he did not

10  accomplish the goal, he at least intended to cause Pequeno considerable anguish by burning

11  down his house or killing his family." (Ans., Ex. B-3 at 39–40.)

12          A federal habeas court does not determine whether it is satisfied that the evidence

13  established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.

14  1992).  The federal court "determines only whether, 'after viewing the evidence in the light

15  most favorable to the prosecution, any rational trier of fact could have found the essential

16  elements of the crime beyond a reasonable doubt.'"  *See id.* (quoting *Jackson v. Virginia*,

17  443 U.S. 307, 319 (1979)).  Only if no rational trier of fact could have found proof of guilt

18  beyond a reasonable doubt, may the writ be granted.  *See Jackson*, 443 U.S. at 324.

19          Here, the jury found true the special circumstance of murder in the commission of

20  arson, which can be found when a "murder was committed while the defendant was

21  engaged in, or was an accomplice in, the commission of, attempted commission of, or the

22  immediate flight after committing, or attempting to commit . . . [a]rson in violation of

23  subdivision (b) of Section 451." Cal. Pen. Code § 190.2(a)(17).

24          Applying these legal principles to the instant matter, the Court concludes that

25  Petitioner's claim is without merit.  As an initial matter, the jury was instructed that in

26  order to find true the special circumstance, the prosecution must prove that "[t]he murder

27  was committed in order to carry out or advance the commission of the crime of arson . . . In

28  order words, the special circumstance . . . is not established if the arson was merely

**United States District Court**
For the Northern District of California

incidental to the commission of the murder." (Ans., Ex. A3 at 1834.)  Second, the jury

heard testimonial evidence to support a finding under this instruction.  Specifically, the jury

heard testimonial evidence of  Petitioner's deep hatred of Paqueno and Petitioner's desire

to harm and to kill him:

> About six months before the fire, [Petitioner] visited David Pequeno at his grandparents' house in connection with a drug transaction.  They argued about Fierro.  [Petitioner] called Fierro "his property."  [Petitioner] often came by Pequeno's grandparents' house to harass and threaten him.  He called Pequeno on the telephone and told Pequeno he was going to kill him, and if he couldn't kill him, he would kill [Petitioner]'s family.
>
> Once, when [Petitioner] came to Pequeno's house to berate him about seeing Fierro, he hit Pequeno on the back of the head with his fist after Pequeno turned to go.  Another time, [Petitioner] threatened Pequeno with a knife at a liquor store.  When Pequeno left, he followed him and rear-ended a car in which Pequeno was a passenger.  Another time, he knocked on Pequeno's door late at night; Pequeno got his gun.  They argued; Pequeno's father and cousin stopped Pequeno from shooting [Petitioner].  [Petitioner] was not armed, but he threatened to kill Pequeno's father if he couldn't kill Pequeno.  [Petitioner] continued to drive by Pequeno's grandparents' house and yell.  Family members put pressure on Pequeno to move out of his grandparents' house.  Eventually, in March of 2000, he partially moved out, although he continued to spend half his time there. There were no confrontations in the month before the fire.

(Ans, Ex. B-3 at 4.)  Mario Vigil, who knew Petitioner through his co-defendant Freitas,

testified that Petitioner said:

1.  "that he was going to make someone 'grieve for the rest of his life' for what that person had done."  (Ans., Ex. B-3 at 11.)

2.  "that if that person's parents were dead it would be 'more effective' for that person to be alive and grieving."  (*Id*.)

3.  that the arson caused Pequeno to "suffer the rest of his life.  Killing him is too good for him.  This way he'll suffer all his life."  (*Id*., Ex. A4–A23, Vol. 10 at 1836.)

4.  "David's going to suffer for the rest of his life.  He's going to be without his grandparents.  That's better than him dying."  (*Id*., Ex. A4–

5.  A23, Vol. 18 at 3181.)

From this evidence of threats against Pequeno and his family, of violence, and

United States District Court
For the Northern District of California

1    planning, a reasonable trier of fact could have found proof beyond a reasonable doubt that

2    Petitioner sought to harm Pequeno, either directly or by harming his family, if he was not

3    able to kill him.  That is, evidence exists that show an intent to harm apart from the intent to

4    kill.  The record, then, establishes the existence of the elements of the special circumstance,

5    that Petitioner murdered while he was engaged in committing arson, a crime performed in

6    order to at least harm Pequeno.  Accordingly, the Court DENIES Petitioner's claim.

7    **II.    Confrontation Clause**

8        Petitioner claims that the trial court violated his rights under the Confrontation

9    Clause, as they are articulated in *Crawford v. Washington*, 541 U.S. 36 (2004), by

10   admitting the preliminary hearing testimony of a witness, Rosendo Amezquita, who was

11   allegedly unavailable to testify at trial.  (Am. Pet. at 30.)  More specifically, petitioner

12   asserts that the trial court erred in crediting the prosecution's assertion that it exercised due

13   diligence in trying to secure Amezquita's presence at trial.  (Id. at 31–32.)

14       Amezquita bought drugs from, and sold drugs to, Petitioner.  At Petitioner's

15   preliminary hearing, Amezquita testified that he drove Petitioner and others in his car the

16   day after the fire.  He heard a passenger mention Petitioner's name in response to a

17   question by another passenger about who caused the fire.  Petitioner responded, "After this,

18   do you think people will respect me?"  Amezquita asked Petitioner whether he had caused

19   the fire.  Petitioner responded by winking his eye, nodding his head and making a gesture

20   like shooting a gun, which Amezquita interpreted "like affirmative."  At a later date,

21   Petitioner asked Amezquita to say that on the night of the fire he and Amezquita had been

22   with two women.  At a another date, one of Petitioner's co-defendants drew his finger

23   across his throat in front of Amezquita, which Amezquita interpreted as meaning that "they

24   meant to kill me or manipulate me."  Another of Petitioner's co-defendants also encouraged

25   Amezquita to change the story he told police about Petitioner, and Petitioner told

26   Amezquita that he (Petitioner) was going to "get even" with Amezquita.  (Ans., Ex. B-3 at

27   12–13.)

28       At trial, the prosecutor sought to have Amezquita's preliminary hearing testimony

United States District Court
For the Northern District of California

6

admitted at trial because, as the prosecutor asserted, Amezquita was unavailable for trial.
Amezquita had been deported to Mexico on March 6, 2002, three months before
Petitioner's trial started.  The state appellate court summarized the relevant facts:

> On June 20, 2002, the second day of trial testimony, a hearing was held on the admissibility of Amezquita's preliminary hearing testimony. John Kracht, the district attorney's investigator, testified that in June or "thereabouts" he had talked to Amezquita's parole agent who informed him that Amezquita had been deported to Mexico on March 6, 2002, after serving his prison sentence.  Kracht then contacted Amezquita's brother, who put him in contact with Amezquita's wife, who in turn gave Kracht Amezquita's phone number and address in Mexico.  He then spoke to Amezquita, who said he would be willing to come back and testify.  On June 11, he wrote a letter to Bruce Ward at the Immigration and Naturalization Service (I.N.S.) requesting that Amezquita be allowed to return to the U.S. to testify.  The deputy director called Kracht about the letter.  In a subsequent conversation the deputy director requested more information and "a rather firm assurance" that Amezquita would return to Mexico after testifying.  He said he had looked up Amezquita's record and concluded Amezquita was a "methamphetamine smuggler" who would "probably bolt" as soon as he reached the United States.  Kracht could not give the deputy director the assurances he wanted.  To ensure Amezquita's coming and going, he felt he would have to have Amezquita in custody, but Amezquita was not wanted for anything and could not simply be locked up.

> Kracht was aware that Amezquita was not a U.S. citizen at the time he first interviewed him for this case, but he was not aware of any I.N.S. hold while Amezquita was in custody and did not attempt to subpoena him for trial while he was in custody.

> At the district attorney's request, Kracht had looked into the possibility of video conferencing.  He had learned that Santa Clara County had the capability, and that there was a potentially compatible site in the State of Jalisco.  Amezquita would have to be transported there from his home in the neighboring state of Aguascalientes.  He estimated that it would take probably a week and a half to two weeks to set up.  He had not yet contacted Amezquita about his willingness to travel to Jalisco; he had called Amezquita that day, but he was not at home.

> During argument on the motion to exclude Amezquita's prior testimony, Guzman's attorney admitted that even if the prosecution had served a subpoena on Amezquita, the I.N.S. would have deported him.  Asked by the court whether it was his position that he "would not be satisfied with" or "not agreeable to" a videoconferencing procedure because the district attorney should have looked into it earlier, defense counsel was unclear.  He seemed to suggest that the offer of videoconferencing did not make up for the prosecutor's lack of diligence in securing Amezquita's appearance at trial. The prosecutor, for his part, saw only the disadvantages of videoconferencing — a scratchy phone connection, with a Spanish interpreter, and a protracted session with court breaks — but he left it "up to the Court."

> The trial court ruled: "I find that [Amezquita] is [ ] unavailable by virtue of the fact that he is in another country and there is no way to compel him to return. Plus, as the testimony indicates, the I.N.S. is reluctant to allow him

7

1   back in the country without an absolute guarantee that he be returned to
2   Mexico, which guarantee really realistically cannot be given by the People
    because he's not in custody. They can pick him up at the airport. That doesn't
3   prevent him from walking out of this building and disappearing.

4   (Ans. Ex. 6 at 19–21.)

5        Out-of-court statements by witnesses that are testimonial hearsay are barred under

6   the Confrontation Clause unless (1) the witnesses are unavailable, and (2) the defendants

7   had a prior opportunity to cross-examine the witnesses. *Crawford*, 541 U.S. at 59.

8   (Because Petitioner focuses on the issue the of unavailability of the witness, the Court need

9   not address the second prong of the *Crawford* analysis.)  The government must show that

10  the witness is "unavailable."  *See Terrovona v. Kincheloe*, 852 F.2d 424, 427 (9th Cir.

11  1988) (dead witness).  This requires that the prosecutor make a good faith effort to obtain

12  the witness's presence. *See Barber v. Page*, 390 U.S. 719, 724–25 (1968).   Of particular

13  interest is *U.S. v. Aguilar*, 295 F.3d 1018, 1020 (9th Cir. 2002), in which the Ninth Circuit

14  ruled that where witnesses could not be compelled to travel to United States, government

15  satisfies the attempt to secure defendant's physical presence where it demonstrates it

16  investigated, but ultimately rejected, the possibility of having defendant attend deposition

17  in another country because of possibility he would not be returned to custody in the United

18  States.

19       Applying these legal principles to the instant matter, the Court concludes that

20  Petitioner's claim is without merit.  The record indicates that the prosecutor exercised due

21  diligence in attempting to procure Amezquita's physical presence in the United States for

22  trial.  First, the evidence shows that the INS would have deported Amezquita before even if

23  the prosecutor had served a subpoena to secure his presence for trial, contrary to

24  Petitioner's assertion that the prosecution deliberately made Amezquita unavailable for

25  trial.  Second, the prosecutor was unable to provide the security necessary to detain

26  Amezquita  — California had no legal way to keep him in custody — and therefore the INS

27  would not approve Amezquita's legal reentry into the United States.

28       This leaves the remaining option of teleconferencing.  The Court concludes that the

**United States District Court**
For the Northern District of California

prosecutor's reasons for finding teleconferencing an unacceptable option — bad phones lines, and the time it would take to set them up, for one — reasonable.

Taking all these considerations into account, the Court concludes that the trial court's determination that Amezquita was unavailable a fair, constitutional decision based on the record.  Accordingly, Amezquita's preliminary hearing testimony was properly admitted under *Crawford.*  Therefore, the Court DENIES Petitioner's Confrontation Clause claim.

### III.   Admission of Hearsay

Petitioner claims that the trial court violated his constitutional rights by refusing to strike (A) evidence of a poem Petitioner wrote, and (B) a witness's testimony that Petitioner liked guns.  (Am. Pet. at 37 & 43.)

#### A.   Poem Evidence

At trial, Petitioner's landlady, Donna Moyles, testified that before the fire she found in her closet a notebook in which a handwritten poem, believed to have been authored by Petitioner, appeared with the line "You are going to burn if you're touching my girl.  I am the boss."  (Ans., Ex. A4–A23, Vol. 8 at 1585.)  Moyles testified that she was not familiar with Petitioner's handwriting and denied telling investigator John Kracht that it was Petitioner's handwriting.  Trial counsel moved to strike Moyles's testimony about the poem.  At an evidentiary hearing on the matter, Kracht testified that when he questioned Moyles, she seemed certain that Petitioner wrote the poem, even though she did not see him write it and was not familiar with his handwriting.  (*Id.*, Vol. 9 at 1690–92.)  The trial court denied the motion to strike the testimony, finding that it was the jury's duty to determine whether an adequate foundation for the poem's authorship had been laid.  The trial court also ruled that the testimony was admissible not as hearsay, but to show that Petitioner had a desire to do what the poem suggests.  (*Id.* at 1694.)

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999).  The Supreme Court "has not yet made a clear ruling that

admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, No. 08-15104, slip op. 7157, 7172 (9th Cir. June 16, 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)).

The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). But note that only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

Applying these principles to the instant matter, the Court concludes that Petitioner has not shown that the admission of the evidence violated his right to due process. Specifically, the jury could have drawn the permissible inference that the poem, if it indeed was Petitioner's, indicated Petitioner had angry, violent feelings toward a person who might touch his ex-girlfriend. On this record, Petitioner has not shown that the admission of the evidence rendered the trial fundamentally unfair, especially considering the weight of the other evidence against him. Furthermore, even if the evidence were prejudicial, because the Supreme Court has not made a clear ruling that the admission of such evidence constitutes a due process violation such that habeas relief is warranted. On this record, this Court must conclude that Petitioner is not entitled to habeas relief on this claim. Accordingly, Petitioner's claim is DENIED.

**B.    Gun Evidence**

At trial, Fierro testified that Petitioner "liked" weapons, and that she had seen him with knives, a gun, and a paperweight in the shape of a grenade. (Ans., Ex. B-3 at 28.) Petitioner claims that the trial court violated his right to due process by failing to strike this testimony, especially considering that it had sustained an objection to the testimony as irrelevant. (Am. Pet. at 43.) The state appellate court, however, rejected Petitioner's claim, finding that this evidence was "manifestly non-prejudicial." (Ans., Ex. B-3 at 28.)

The Court concludes that the admission of Fierro's testimony did not result in a trial that was fundamentally unfair to Petitioner in violation of due process.  As the state appellate court found, this bit of Fierro's testimony was "overshadowed" by other unobjected-to testimonial evidence.  For example, Moyles testified that Petitioner once broke up a party by shooting his .38 caliber pistol into the ground.  Also, Moyles and other witnesses testified that Petitioner owned rifles, pistols, gunpowder, and that he would often shoot at roadsigns when he went on drug runs.  (*Id*. at 28–29.)  On this record, Petitioner has not shown that Fierro's testimony resulted in a trial that was fundamentally unfair.  Accordingly, this claim is DENIED.

## IV.    Alleged Prosecutorial Misconduct

Petitioner claims that the prosecutor committed misconduct by impermissibly referring to Petitioner's refusal to testify in violation of Petitioner's Fifth Amendment rights as they are articulated in *Griffin v. California*, 380 U.S. 609 (1965).  (Am. Pet. at 45.)

The prosecutor, in his closing argument, stated

I'm just gonna [*sic*] go over some of the evidence in this case.  It's a remarkable case from the amount of evidence that I've got, I would submit to you.  [¶]  First of, the prosecution on this case has provided to you two out of the three murderers who come in here and tell you themselves from their own mouths what really happened **. . .** Not even Perry Mason gets two out of the three to tell you what happened in this case. So you have an extraordinary amount of evidence. You are going to have to weigh who's telling the truth.  I don't know what more I could get for you.  And those murderers at least are all in agreement I think, that we did it, the three of us . . . But most importantly I will talk about Mr. Rusich's case and I will submit to you that he's to be believed and he's credible and he's truthful."  [ ]

After discussing Rusich's testimony, contrasting it to Freitas's and directing the jury's attention to the corroborative evidence, the prosecutor summed up by saying:  "In a nutshell, that's the full evidence you get from two out of the three actual murderers in this case. You also get." At this point, defense counsel objected and moved for a mistrial.

(Ans., Ex. B-3 at 32.)  The trial court denied trial counsel's motion for a mistrial, finding that the comment "isn't directing the jury's attention indirectly to the fact that [Petitioner] didn't testify."  (*Id*.)  The state appellate court rejected this claim, finding that the comments "could have had no significant impact upon the jurors and were harmless beyond

a reasonable doubt." (*Id.* at 34.)

Where a prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, or to treat the defendant's silence as substantive evidence of guilt, the defendant's privilege against compulsory self-incrimination is violated. *See Griffin*, 380 U.S. at 615. While it is proper for the prosecution to address the defense arguments, a comment is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. *See Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987) (citing *U.S. v. Bagley*, 772 F.2d 482, 494 (9th Cir. 1985)).

However, such commentary by the prosecutor requires reversal only if "(1) the commentary is extensive; (2) an inference of guilt from silence is stressed to the jury as a basis for the conviction; and (3) where there is evidence that could have supported acquittal." *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993) (citation omitted). Put differently, such improper commentary warrants reversal only if it appears that it may have affected the verdict. *See Lincoln*, 807 F.2d at 809.

Assuming *arguendo* that the comment was impermissible, the Court concludes that Petitioner has not shown that these comments may have affected the verdict. First, the commentary was not extensive, but appeared only twice, and did not mention Petitioner directly, although it did implicitly pose the question about the identity of the third and nontestifying defendant, viz., Petitioner. Second, the prosecutor's comment certainly did not stress the jury to infer Petitioner's guilt from his silence. Rather, the prosecutor was pointing out the strength of the evidence against Petitioner, as provided by two close eyewitnesses to the crime, viz., Rusich and Freitas. Third, Petitioner has not shown any exonerating evidence, or any countering evidence to the strong evidence of guilt, or the availability of any defenses, that would have supported acquittal. Rather, the evidence against Petitioner was quite strong. On this record, the Court DENIES Petitioner's claim.

## V.    Alleged Instructional Error and Assistance of Counsel

Petitioner claims that the trial court violated his due process right to a fair trial when it refused to instruct the jury regarding the testimony of accomplices. (Am. Pet. at 49.)

United States District Court
For the Northern District of California

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United *States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

The trial court refused trial counsel's request to instruct the jury according to CALJIC No. 3.13, which requires that the testimony of an accomplice must be corroborated by independent evidence. The state appellate court rejected Petitioner's claim on this issue, finding that the CALJIC No. 3.13 would have been redundant, the trial court having given "otherwise comprehensive accomplice instructions." (Ans., Ex. B-3 at 30.)

Petitioner claim is without merit because the trial court gave another instruction, CALJIC 3.12, that, like No. 3.13, adequately informed the jury that accomplice testimony had to be corroborated by independent evidence:

> To corroborate the testimony of an accomplice, there must be evidence of some act or fact related to the crime which, if believed by itself and *without any aid, interpretation, or direction from the testimony of the accomplice*, tends to connect t

(Ans., Ex. A2 at 1807.) (Italics added.) Because the trial court's other instructions adequately covered the issue of accomplice testimony, the Court concludes that the trial court did not violate Petitioner's constitutional rights. This claim is DENIED.

## VI.    Effectiveness of Trial Counsel

Petitioner claims that trial counsel rendered ineffective assistance when he failed to object to the prosecution's disparagement of trial counsel. (Am. Pet. at 52.) The state appellate court rejected this claim, finding simply that these comments could not have affected the verdict. (Ans., Ex. B-3 at 37.)

At trial, the prosecutor made several comments about trial counsel. For example, the prosecutor stated it was improper of defense counsel to suggest that the jurors violate their oath by creating a defense for Petitioner on suppositions that lacked supporting evidence.

13

Petitioner also objects to trial counsel's failure to object to the prosecutor's descriptions of trial counsel as "misleading."  (Ans., B-3 at 35.)

Claims of ineffective assistance of counsel are examined under *Strickland v.Washington*, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Id*. at 687–68.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id*.  Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695.  It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even establish incompetence under the first prong.  *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

Tactical decisions of trial counsel deserve deference when:  (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances. *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Applying these principles to the instant matter, the Court concludes that Petitioner's claim is without merit.  As to the first prong of *Strickland*, the Court must give deference to trial counsel's tactical decision not to object out of concern that an objection would all too much attention to disparagements.  As to the second Strickland prong, Petitioner has not shown that even if trial counsel's inaction was a deficient performance, that such inaction resulted in prejudice.  As shown above, these comments were overshadowed by the strong evidence against Petitioner.  On this record, the Court DENIES this claim.

VII.   Remaining Claims

14

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In his October 2007 amended petition, Petitioner advances three new claims: (1) the trial court refused to define the elements of conspiracy; (2) the trial court's felony murder instructions were constitutionally defective; and (3) trial counsel rendered ineffective assistance by failing to challenge a witness's testimony on the grounds that the witness's plea agreement did not require truthful testimony.

The Court concludes that these claims are untimely, having been filed in October 2007 which is more than one year after the state court judgment became final by the conclusion of direct review, which is here September 2005. *See* 28 U.S.C. § 2244(d). The limitations period would not bar review of the claims if they related back to those filed in the original petition. *See Mayle v. Felix*, 545 U.S. 644 (2005). Petitioner has not shown that these claims relate back to the claims he asserted in the original petition. A comparison of Petitioner's original claims and these new claims shows that the new claims arise from a separate congeries of facts, and are separate occurrences. *Id.* at 661. The Court concludes that these new claims are untimely and are barred. Accordingly, Petitioner's three additional claims are DENIED.

### CONCLUSION

As to all Petitioner's claims, the Court concludes that the state court's adjudications were not contrary to, or unreasonable applications of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. 2254 (d)(1), (2). Accordingly, the petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.

Because the petition is denied, the Court need not reconsider its earlier denial of Petitioner's motion for an evidentiary hearing.

**IT IS SO ORDERED.**

Dated: August 3, 2009

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

GILBERT GUZMAN,                              Case Number: CV06-05241 JSW

          Plaintiff,                         **CERTIFICATE OF SERVICE**

     v.

M.S. EVANS et al,

          Defendant.
_____/

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 3, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Gilbert Guzman
Salinas Valley State Prison
T65316
P.O. Box 1050
Soledad, CA 93960

Dated: August 3, 2009

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

16